**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **U.S. EQUAL EMPLOYMENT** | ) | |
| **OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 1:18-cv-01357** |
| **v.** | ) | |
| | ) | **Honorable John Kness** |
| **CHICAGO MEAT AUTHORITY, INC.** | ) | **Magistrate Judge Maria Valdez** |
| | ) | |
| **Defendant.** | ) | |

## CONSENT DECREE

### THE LITIGATION

1.      On February 22, 2018, Plaintiff Equal Employment Opportunity Commission ("EEOC" or "Commission") filed Case No. 18-cv-01357 alleging that Defendant Chicago Meat Authority, Inc. ("CMA" or "Defendant") violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, since at least 2012, by failing or refusing to hire or recruit African Americans for collective bargaining unit positions because of their race, by subjecting a class of African American employees to a hostile work environment based on their race, and failing to take prompt and effective action to remedy the harassment about which Defendant knew or should have known, and by terminating the employment of African American Charging Party Angelo Turner in retaliation for his complaints of discrimination and/or because of his race.

2.      Defendant has denied all allegations of discrimination, harassment and retaliation alleged by the EEOC, and on April 23, 2018, filed an Answer denying all allegations made by EEOC in its Complaint and raising a number of affirmative defenses.

3.     In the interest of resolving these matters, and as a result of having engaged in comprehensive settlement negotiations, the parties have agreed that all issues, claims and allegations against Defendant raised in the EEOC's Complaint should be finally resolved by entry of this Consent Decree (hereafter "Decree").  By entering into this Decree, neither party makes any admission regarding any claims or defenses alleged in this action, and this Decree shall not constitute either an adjudication or finding on the merits of the Complaint or the Answer.

4.     EEOC shall not use the Charges underlying this Lawsuit (Charge Nos. 440-2013-02979C, 440-2015-01249C, 846-2013-36284C, 846-2014-14385C and 21B-2013-01109C), as the jurisdictional basis for filing any other lawsuit or lawsuits against Defendant alleging that it discriminated against African American applicants and employees from 2012 to the present. For purposes of this Decree, "employees" includes temporary employees and those added to CMA's payroll.

## FINDINGS

5.     Having carefully examined the terms and provisions of this Decree, and based on the pleadings, record, and stipulations of the parties, the Court finds the following:

    a.     This Court has jurisdiction of the subject matter of this action and of the parties;

    b.     The terms of this Decree are adequate, fair, reasonable, equitable, and just.  The rights of EEOC, Defendant, the Charging Parties, the claimants, and the public interest are adequately protected by this Decree; and

    c.     This Decree and the accompanying Release conform to the Federal Rules of Civil Procedure and Title VII and is not in derogation of the rights or privileges of any person. The entry of this Decree will further the objectives of Title VII and will be in the best interests of the parties, the Charging Parties, the claimants, and the public.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

## **INJUNCTION**

6.       Defendant, its officers, agents, employees, successors, assigns and all persons acting in concert with it shall not engage in any employment practice in violation of Title VII that discriminates on the basis of race in hiring into or termination from Bargaining Unit Positions (as defined in Paragraph 22 below), and shall not foster or permit harassment of any individual on the basis of race.

7.       Defendant, its officers, agents, employees, successors, assigns and all persons acting in concert with them shall not engage in any form of retaliation against any person because such person has opposed any practice made unlawful under Title VII, filed a Charge of Discrimination under Title VII, testified or participated in any manner in any investigation, proceeding, or hearing under Title VII, asserted any rights under this Decree, or benefitted from the relief provided by this Decree.

## **MONETARY RELIEF**

8.       Defendant shall pay the gross aggregate sum of $1,100,000.00 (one million one hundred thousand dollars) to be distributed among the Eligible Claimants, as defined below.

9.       Within five days of the entry of this Decree, Defendant shall cause to be established a Settlement Fund ("Settlement Fund") in the amount of $1,100,000.00 (one million one hundred thousand dollars) to be distributed to Eligible Claimants as provided in Paragraph 10 of this Decree.

10.       "Eligible Claimants" are (a) Charging Parties Jarrod Reddix, Angelo Turner, Michael Austin, and Curtis Dowdell; (b) African American employees identified by EEOC during the litigation as having been subjected to race harassment; and (c) African American applicants identified by EEOC who unsuccessfully sought employment at CMA from January 1, 2012 to the date of the entry of this Decree.

3

11.    **Claims Administrator.** Within 10 days of the entry of the Decree, EEOC shall select a Claims Administrator (with CMA's approval, which should not be unreasonably withheld) who shall: (1) mail notification of monetary awards and releases to Eligible Claimants; (2) receive and record signed releases from Eligible Claimants; (3) issue checks to Eligible Claimants from the Settlement Fund; (4) issue related tax documents; and (5) perform such other administrative tasks as it may deem necessary to facilitate the distribution process.  All expenses, fees, and costs of the Claims Administrator shall be paid by Defendant.

12.    **Determination of Claims**.  Within 21 days after entry of the Decree, EEOC shall make a determination as to the amount of each award for each Eligible Claimant. This determination is not subject to review or consent by Defendant. CMA shall have no part in determining who is an Eligible Claimant or how the monetary relief is distributed among the Eligible Claimants. In making its determinations, EEOC will take into account the evidence obtained through the investigation and the litigation, including for the harassment claimants, each Eligible Claimant's tenure working for CMA and the nature and extent of the harassment experienced by the Claimant; for the hiring claimants, each Eligible Claimant's number of applications for employment and the type of position applied for; and for all claimants, the extent of cooperation during the litigation.  None of the monetary relief paid by CMA to any Eligible Claimant represents alleged damages for any medical expenses.

13.    **Notification of Awards and Release of Claims**. Within 28 calendar days of entry of the Decree, EEOC shall file under seal a separate document showing each Eligible Claimant's award and seeking judicial approval of the allocation.  Within seven days after judicial approval, EEOC shall provide the Claims Administrator a list of Eligible Claimants and the amount of the Eligible Claimant's award. Within 10 days after receiving the list of Eligible Claimants and award amounts, the Claims Administrator shall mail, via United States Mail or electronic mail, an award notification

letter from EEOC and a Release (a copy of which is attached as Exhibit A) to all individuals on the list. The letter shall inform each Eligible Claimant that such Release must be signed and mailed or emailed to the Claims Administrator so that it is received by the Claims Administrator within 28 days of the mailing of the Notification of Award. To provide the best notice practicable, before mailing the Claim Packages, the Claims Administrator shall run the list of all potential Eligible Claimants through the United States Postal Service's National Change of Address database ("NCOA"). The Claims Administrator shall promptly provide all signed Releases to CMA.

14. **Untimely or Unreturned Releases**. Any Eligible Claimant whose executed Release is not received by the Claims Administrator within 28 days of the mailing of the Notification of Award shall be ineligible for any relief under this Decree. If any Eligible Claimant's executed Release is not received by the Claims Administrator within 28 days of the mailing of the Notification Award, his/her share of the Settlement Fund shall be distributed to the *cy pres* fund. In no event shall there be any reversion of any part of the settlement funds to CMA.

15. **Distribution of Settlement Fund**. The Claims Administrator shall issue checks to each Eligible Claimant within 14 days of the date all releases are received by the Claims Administrator and where applicable, after all necessary tax forms are provided to CMA, in accordance with Paragraph 19 of this Decree.

16. **Returned or Uncashed Checks**. The Claims Administrator shall promptly notify EEOC in writing of any checks that are returned or are not cashed after a period of 21 days has elapsed from the date on which the settlement checks were mailed. If any Eligible Claimant's check is undeliverable or uncashed, and the EEOC determines that the Eligible Claimant cannot be located, any leftover balance of the Settlement Fund shall be designated as a *cy pres* fund to be distributed to

Chicago Urban League. In no event shall there be any reversion of any part of the Settlement Fund to CMA.

17. **Costs**. All costs associated with the administration and distribution of the settlement funds to Eligible Claimants shall be paid by CMA, including without limitation, all postage costs related to the issuance and mailing of checks from the Settlement Fund and all costs associated with stopping payment on checks.

18. **Claims of Deceased Persons**. Monetary payments can be made to deceased Eligible Claimants through representatives of their estate or next of kin if the EEOC determines that appropriate documentation (*e.g.*, small estate affidavit, letters testamentary or the equivalent), has been provided. Any sums paid to a deceased Eligible Claimant shall be made payable to the estate of the deceased Eligible Claimant, or if no estate exists, to the decedent's next of kin, provided the estate of the deceased Eligible Claimant or decedent's next of kin complies with the time period set forth in Paragraph 14 above with respect to the Claims Administrator's receipt of the executed Release.

19. **Tax treatment**. All amounts distributed from the Settlement Fund to Eligible Claimants for the alleged racially hostile work environment shall constitute compensatory damages under the Civil Rights Act of 1991, 42 U.S.C. §1981a. Seventy-five percent of the amount paid to Angelo Turner for his discharge claims shall constitute compensatory damages and twenty-five percent shall constitute back pay from which the employee's share of payroll taxes shall be withheld. Seventy-five percent of the amounts distributed from the Settlement Fund to Eligible Claimants for hiring claims shall constitute compensatory damages and twenty-five percent shall constitute back pay from which the employee's share of payroll taxes shall be withheld. The Defendant shall be provided a copy of the award amounts at the time that such amounts are filed with the court under Paragraph 13 and the Defendant shall be responsible for paying the employer's share of payroll taxes, which shall

not be made from or constitute any portion of the Settlement Fund. The Claims Administrator shall issue applicable forms W-2 and 1099 reflecting the payments made to each claimant from the Settlement Fund.

**HIRING RELIEF**

20.     For purposes of this Decree only, "hiring" shall include both a) CMA adding to its payroll an individual working in Bargaining Unit Positions (as defined in Paragraph 22 below) and b) CMA utilizing temporary workers placed at CMA through staffing agencies to perform the work of Bargaining Unit Positions.

21.     For purposes of this Decree, "Applicant Flow" shall be defined as all applications or submissions of resumes to CMA or to an agent of CMA, seeking employment in a Bargaining Unit Position (as defined in Paragraph 22 below), whether in person or electronically. For purposes of this Decree, Applicant Flow will not include individuals applying to, applying through, or placed by temporary staffing or employment staffing firms (*i.e.* individuals described in Paragraph 20 (b) above).

22.     Under this decree, "Bargaining Unit Positions" refers to all positions covered by CMA's CBA with the UFCW and any position that performs the same work as a Bargaining Unit Position currently covered by the Agreement Between UFCW International Union Local 1546 and CMA executed October 26, 2020. "General Labor Positions" consist of all job positions with the titles "general labor" and "sanitation" or any job titles performing substantially the same work as the work currently performed by those job titles (CMA (EEOC)_00083577-80). "Skilled Labor Positions" consist of all other positions (CMA (EEOC)_00083575-76; 00083581-99)[1].

23.     Job requirements are defined in CMA's job descriptions (CMA (EEOC)_00083575 – 83599). During the term of the Decree, CMA shall notify the EEOC within 7 days of any change to

---

[1] These documents comprise the job postings, including job descriptions, which were produced by CMA during discovery in this case.

the job description or job qualifications of any CMA Bargaining Unit Position. If the change would either (a) change the applicable Hiring Goal category, or (b) otherwise affect the EEOC's ability to monitor or ensure compliance with the Decree, the EEOC must provide CMA with any documentation in support within 7 days of CMA's notification of the change, and if the parties cannot resolve the issue, the EEOC has 7 days thereafter to invoke the dispute resolution process in Paragraph 52.

24.     Within 7 days after entry of this Decree, EEOC shall provide CMA with a one-time list of Eligible Claimants with updated applications who were unsuccessful applicants to CMA for General Labor Positions who still wish to be considered for employment by CMA ("General Labor Instatement List"). When CMA fills General Labor Positions, CMA shall hire, subject to the qualifications identified in Paragraph 23, a minimum of one individual from the General Labor Instatement List for every two individuals in each of these positions whom CMA hires from any other source. CMA shall work in good faith with each claimant on the General Labor Instatement List to facilitate his/her hiring as it would with any other applicant for employment (e.g., accommodating a requested start date). CMA is required to provide claimants from the General Labor Instatement List a start date up to four weeks from the offer date.  CMA may provide a later start date if it wishes.  If a claimant from the General Labor Instatement List: (a) does not respond to CMA's request for an interview within 10 days of the request, (b) declines an offer of employment from CMA for any reason, (c) does not respond to an offer of employment from CMA within 10 days, or (d) fails to report for work on the start date provided, that claimant's name shall be removed from the General Labor Instatement List. CMA shall communicate all requests for interviews and offers of employment via both the telephone number and electronic mail address provided by the EEOC for each individual on the Instatement List. If CMA exhausts the General Labor Instatement List prior to the expiration of this Decree, its duty to hire from the General Labor Instatement List is fulfilled.

25.     Within 7 days after entry of this Decree, EEOC shall provide CMA with a one-time list of Eligible Claimants who were unsuccessful applicants to CMA for Skilled Labor Positions who still wish to be considered for employment by CMA ("Skilled Labor Instatement List"). When CMA fills Skilled Labor Positions, CMA shall hire, subject to the qualifications identified in Paragraph 23, a minimum of one individual from the Skilled Labor Instatement List for every two individuals CMA hires from any other source. CMA shall work in good faith with each claimant on the Skilled Labor Instatement List to facilitate his/her hiring as it would with any other applicant for employment (e.g., accommodating a requested start date).  CMA is required to provide claimants from the Skilled Labor Instatement List a start date up to four weeks from the offer date.  CMA may provide a later start date if it wishes.   If a claimant from the Skilled Labor Instatement List: (a) does not respond to CMA's request for an interview within 10 days of the request, (b) declines an offer of employment from CMA for any reason, (c) does not respond to an offer of employment from CMA within 10 days, or (d) fails to report for work on the start date provided, that claimant's name shall be removed from the Skilled Labor Instatement List.  CMA shall communicate all requests for interviews and offers of employment via both the telephone number and electronic mail address provided by the EEOC for each individual on the Instatement List. If CMA exhausts the Skilled Labor Instatement List prior to the expiration of this Decree, its duty to hire from the Skilled Labor Instatement List is fulfilled.

26.     Defendants shall apply the same qualification standards and hiring criteria to all applicants, regardless of race and/or status as an Eligible Claimant in the case. If CMA believes an individual named on either Instatement List does not meet the qualifications for the position and is refusing to offer employment to such an individual on that basis, CMA must document all facts that explain its determination why an individual from the Instatement list is unqualified and must

demonstrate that those particular qualifications have been routinely required of all applicants for that position within the past six months.

27.     If a meat processing facility within 50 miles of CMA ceases operations and CMA wants to hire experienced workers from that facility (individuals who have worked at that facility for at least 90 days), into General Labor or Skilled Labor positions CMA can make an exception to the hiring order described above by notifying EEOC of the facility closing within thirty days of the facility closing, hiring experienced workers from that facility within thirty days of the facility closing, and thereafter hiring claimants from the General or Skilled Labor Instatement List without hiring from another source until CMA has hired the same number of claimants from the General or Skilled Labor Instatement List as experienced workers from the closed facility or exhausted the General or Skilled Labor Instatement List.

## HIRING GOALS

28.     To ameliorate past conduct alleged by the EEOC, once CMA has exhausted hiring from the General and Skilled Labor Instatement Lists, it shall exercise its Best Efforts, as defined below in this paragraph, to meet the hiring goals for African Americans set forth in this section. These goals do not establish minimum or maximum rates for the hiring of African Americans.  Rather, these goals establish selection rates that CMA will use its Best Efforts, as defined below in this paragraph, to achieve. These goals are not quotas but are designed to provide guidance as to whether CMA is making hiring decisions in such a way as to afford equal employment opportunity.  The hiring goals were set based upon analysis by CMA and the EEOC of applicant data maintained by CMA and third-parties. "Best Efforts" means implementing and adequately funding a plan reasonably designed to achieve the specific hiring goals set forth in Paragraph 29.

29.     The day after CMA has exhausted the General Labor Instatement List, CMA will have a hiring goal for General Labor Positions that 50 percent of new hires will be African American ("General Labor Hiring Goal").  Thereafter, progress toward the General Labor Hiring Goal shall be measured by CMA at six-month intervals using the past six months' data, for the duration of the Decree. The day after CMA has exhausted the Skilled Labor Instatement List, CMA will have a hiring goal for Skilled Labor Positions that 43 percent of new hires will be African American ("Skilled Labor Hiring Goal").  Thereafter, progress toward the Skilled Hiring Goal shall be measured by CMA at six-month intervals using the past six months' data, for the duration of the Decree.

30.     CMA shall use a voluntary self-identification form to identify the race of applicants from its Applicant Flow.  The voluntary self-identification form shall be maintained separately from the applicant's other application materials. The voluntary self-identification form shall not be provided to any individual who makes or has input into decisions regarding whether to interview or hire an applicant.

31.     CMA shall calculate and monitor, by applicant self-identification, the Applicant Flow rate of African Americans. "Applicant Rate" shall be the Applicant Flow of African Americans measured on a six-month basis.  For purposes of calculating this rate, an individual shall only be counted once during each six-month period regardless of how many applications the individual submits for a General Labor or Skilled Labor position during that six-month period. However, multiple applications by the same individual seeking both General Labor and Skilled Labor positions shall count once for General Labor and once for Skilled Labor.

32.     If more than 90 percent of CMA's hires into General Labor Positions came from the Applicant Flow during the preceding six-month period while the Decree is in effect, CMA's General Labor Hiring Goal shall be based on the Applicant Rate for General Labor positions in the preceding

six-month period as the revised hiring goal for African Americans (in "General Labor"). CMA shall identify the General Applicant Rate to the EEOC within fourteen calendar days of the beginning of each six-month period. If more than 90 percent of CMA's hires into Skilled Labor Positions came from the Applicant Flow during the preceding six-month period, CMA's Skilled Labor hiring goal shall be based on the Applicant Rate for Skilled positions in the preceding six-month period as the revised hiring goal for African-Americans (in "Skilled Labor"). CMA shall identify the Skilled Applicant Rate to the EEOC within fourteen calendar days of the beginning of each six-month period.

33.     So long as CMA's hiring from Applicant Flow remains the source of 90% or less of its hiring for open General Labor Positions or Skilled Labor Positions, the Hiring Goal shall continue to be set as described in Paragraph 29. CMA's failure to achieve any Hiring Goal for a particular period shall not be considered a violation of the Decree if CMA can demonstrate that it used Best Efforts to meet the Hiring Goal.

34.     The utilization of third-party temporary employment agencies and the racial composition of the individuals sent by these agencies to work at CMA shall not, by itself, establish a Best Efforts defense for any failure to meet the hiring goals set forth in this Decree.

## ADDITIONAL RELIEF FOR CHARGING PARTY TURNER

35.     CMA shall expunge any records reflecting that Turner was involuntarily terminated and shall provide Turner a neutral letter of reference.

## RECORD KEEPING

36.     For the duration of the Decree, Defendant shall maintain in native electronic format, or in paper if not available in electronic format, as well as any other format that Defendant creates or maintains, and make available for inspection and copying by the EEOC the following records for open Bargaining Unit Positions:

a.  All applications for employment, including enclosures such as resumes and cover letters;

b.  Any notes of interviews with an applicant, notes of other contact with an applicant and notes of attempts to contact an applicant;

c.  All applicant race self-identification information, including self-identification forms;

d.  A spreadsheet containing for each applicant to a Bargaining Unit Position: the name, address, telephone number, race, position applied for, date of application, interview date; date of job offer and position offered (if any); whether an applicant failed to respond to an interview request; whether an applicant withdrew from the application process; whether a job offer was accepted or rejected; if applicable, reason for rejection for employment if not given a job offer (to the extent the above personal information is provided by the applicant);

e.  A spreadsheet showing each employee's name, address, telephone number, race, position held, start date, termination date (if applicable), reason for termination (if applicable);

f.  Documentation related to the separation of each employee, including each individual placed or referred by a staffing agency;

g.  Job descriptions; and

h.  Documents related to any complaint of race discrimination, race harassment or retaliation made by an applicant or employee. Such documents shall include the date the complaint was made, the name of the complainant, the allegations of the complaint, and what actions Defendant took, if any, to resolve the matter.

37.  CMA shall make all documents or records referred to in Paragraph 36 above available for inspection and copying within 30 days after the EEOC so requests. CMA shall be required to verify compliance with this Decree, and to require its personnel to cooperate with the EEOC and to be interviewed upon request.

## REPORTING

38.     Within 30 days of the end of the first six months after the entry of the Decree, and

within 30 days of the end of six-month intervals thereafter for the duration of the Decree, Defendant

shall provide reports to the EEOC, as described in (a)-(j) below. The last report shall be due 60 days

before the expiration of the Decree. The reports shall include the information regarding the following:

a.  A spreadsheet of all hiring from the Instatement Lists for General and Skilled positions, including who was offered a position and the date of the offer, whether the offer was accepted or rejected, and whether anyone on the list was deemed unqualified and why;

b.  A report summarizing hiring for the reporting period including: (1) a summary of racial breakdown of Applicant Flow for the reporting period, to the extent known; (2) identification of the applicable Hiring Goal for the reporting period; (3) indication of any shortfalls, if any, CMA had in achieving the Hiring Goals; (4) an explanation of possible reasons for such shortfall (if applicable); and (5) identification of plans to facilitate achievement of the Hiring Goals (if applicable);

c.  a spreadsheet containing for each individual who is referred to or placed by a Staffing Agency for work in a Bargaining Unit Position: name, response to self-reported race, address, the position in which the individual was placed, the Staffing Agency that placed or referred the worker, start date, end date (if applicable), and the date on which the individual was transferred to such Defendant's own payroll (if applicable); separation date from CMA (voluntary or involuntary) (if applicable);

d.  A spreadsheet containing for each applicant to Bargaining Unit Position: the name, race, address, telephone number, position applied for, date of application, interview date; date of job offer and position offered (if any); whether an applicant failed to respond to an interview request; whether an applicant withdrew from the application process; whether a job offer was accepted or rejected; if applicable, reason for rejection for employment if not given a job offer; start date (if applicable), separation date (voluntary or involuntary) (if applicable), and reason for separation (if applicable);

e.  A detailed description of Defendant's Best Efforts to hire African American employees for Bargaining Unit Positions if Defendant did not meet the General Labor or Skilled Hiring Goals;

f.  A description of changes, if any, to Defendant's application, interviewing, and hiring procedures, or job descriptions that were made during the reporting period; and

g.  All complaints or reports (including any reports received pursuant to Paragraph 40(d)), oral or written, of race discrimination, race harassment or retaliation made directly to CMA supervisors or managers, CMA Human Resources or to the hotline required by Paragraph 43 and what actions, if any, CMA took to resolve the matter.

h. A summary of all investigations conducted by CMA (or on behalf of CMA) or CMA's response otherwise regarding complaints of race discrimination, race harassment, or retaliation, including copies of any interviews, notes, reports, or discipline that relates to such an investigations or response.

i. Written confirmation that racial discrimination, racial harassment and retaliation training has been provided to new and incumbent employees during the reporting period as required by the Decree in Paragraph 44.

j. Written confirmation that the posting required by Paragraphs 49-50 of this Decree has been displayed as required.

<u>**POLICIES AGAINST DISCRIMINATION**</u>

39.    Within sixty days of the entry of the Decree, CMA will review its anti-discrimination and anti-retaliation policies to ensure they are consistent with the Defendant's obligations under the Decree.  CMA will redistribute the policies to each of its employees. The policies will be written in both Spanish and English.

40.    The policies will include, at minimum, the following:

a. A prohibition against race discrimination, including examples of actions that are prohibited;

b. A prohibition against race harassment, including a definition of race harassment and examples of behavior that could be considered race harassment;

c. A prohibition against retaliation for complaining about race discrimination;

d. A provision that any manager or supervisor who becomes aware of race discrimination, racial harassment, or retaliation must report it to Human Resources;

e. A provision that employees can complain of race discrimination, racial harassment, or retaliation to any manager or supervisor, directly to any human resources personnel, whose name, address, and telephone number shall be included in the Policy, or to the hotline created pursuant to Paragraph 43 below;

f. A provision that employees are not required to complain of race discrimination, harassment, or retaliation to a person against whom they allege discrimination, harassment, or retaliation;

g. A provision that an employee found to have engaged in race discrimination or harassment, will be subject to discipline, up to and including termination;

h. A provision that CMA will protect the confidentiality of discrimination, harassment, and retaliation complainants to the extent possible; and

i. A provision that employees who complain of race discrimination, racial harassment, or retaliation or provide information related to such complaints will not be retaliated

against and that employees engaging in retaliation will be subject to discipline, up to and including termination.

41. CMA shall develop and maintain a policy regarding internal investigation of all complaints concerning alleged race harassment, race discrimination, and retaliation. CMA's policy, at a minimum, shall require that:

    a. CMA make all reasonable efforts to fully investigate all complaints of alleged unlawful harassment, retaliation, and/or discrimination within seven (7) days of the date of the complaint to CMA;

    b. All interviews be conducted in person (provided that an in person interview is agreed to by the interviewee and that in person interviews are feasible and advisable under local, state or federal guidelines relating to the pandemic or similar health crisis);

    c. All material witnesses be interviewed or asked to be interviewed;

    d. CMA shall preserve all evidence (if applicable) in a manner that will facilitate further investigation;

    e. All complaining parties and witnesses will be assured that they will not be retaliated against;

    f. CMA prepare written findings of the results of each investigation; and

    g. Promptly upon the conclusion of its investigation of a complaint, CMA will communicate to the complaining party the results of the investigation and whether remedial actions were taken. If the person complained about is a bargaining unit employee, whether remedial actions were proposed but are subject to challenge by that employee under the grievance arbitration provision of the collective bargaining agreement.

42. The inclusion of Paragraph 41 in the Decree does not represent EEOC's or the Court's approval of Defendant's policies against race discrimination, racial harassment, or retaliation.

43. CMA will retain an outside service to operate a complaint hotline for complaints of race harassment, discrimination, and retaliation. CMA will provide written notice of this hotline to all applicants and new employees. Notice of this hotline will be posted in breakrooms, restrooms and

locker rooms. The required reporting under this Decree will include reports of any complaints made to the hotline.

## **TRAINING**

44.     CMA shall (1) provide all workers in any Bargaining Unit Position as defined in paragraph 22 with a written copy of CMA's anti-harassment policy prior to the time that they begin performing work; (2) require all persons who are hired (as defined in paragraph 20) and have worked at CMA for at least thirty (30) days, to attend the next initial anti-harassment and retaliation training given monthly, and thereafter, annual anti-harassment and retaliation training, as long as they remain working at CMA at the time of the monthly and annual training, both of which can be offered via video or PowerPoint presentation and must be available in both English and Spanish and offered to employees in the language of their choice; and (3) provide annual in-person training by an outside/independent trainer to all managers, and human resources personnel on harassment and discrimination (provided that in person training is feasible and advisable under local, state or federal guidelines relating to the pandemic or similar health crisis).

45.     CMA shall obtain the EEOC's approval of its proposed training content and materials to be used under this Decree. Before it is used for the first time and within thirty days of the entry of this Decree, CMA shall submit to EEOC the video or PowerPoint presentation proposed to be used as its monthly training described in Paragraph 44(2) above. Within 60 days prior to the proposed training described in Paragraph 44(3) above, CMA shall submit to EEOC the name(s), address(es), telephone number(s), resume(s) and training proposal of their proposed annual training (including copies of all materials proposed to be displayed, distributed, or otherwise presented).  EEOC shall have 30 days from the date it receives the information described above to accept or reject the proposed training proposal, and/or training materials. In the event the EEOC does not approve CMA's proposed training proposal and/or training materials, CMA shall have 30 days to identify an alternate training proposal

17

and/or make changes to the training proposal and/or training materials. The EEOC shall then have seven days from the date it receives the information described above to accept or reject the alternate training proposal, and/or training materials. If the parties cannot agree on a training proposal or training content through this process, they may seek the Court's assistance under Paragraph 52, below.

46.     **Managers and Human Resources Personnel**. All managers and human resources professionals and any other person who has any responsibility for hiring at CMA, including any responsibility for providing applications to potential applicants or responsibility for enforcing CMA's policies against discrimination and retaliation, will participate annually in an in person training session regarding Title VII's prohibition on racial discrimination in hiring, racial harassment, and retaliation. The first annual training shall take place within 120 days of entry of this Decree.

47.     CMA shall certify to the EEOC, in writing, within fourteen days after each annual training session that the training required by Paragraphs 44 and 46 has occurred and that the required personnel have attended.  Such certification(s) shall include: (i) the date, location and duration of the training; (ii) a copy of the registry of attendance, which shall include the name and position of each person in attendance; and (iii) a list of all persons holding non-Bargaining Unit Positions currently employed at CMA.

48.     Within fourteen (14) days after each annual training session has occurred, CMA shall provide the EEOC with copies of any and all pamphlets, brochures, outlines or other written material(s) provided to the participants of the training session(s).

## **POSTING OF NOTICES**

49.     Within fourteen (14) days following entry of this Decree, Defendant will post a same-sized copy of the Notice attached as Exhibit B to this Decree in a conspicuous location easily accessible to and commonly frequented by applicants for employment, and for employees working at CMA. The Notice will remain posted for the term of the Decree.

18

50.     The Notice will be written in both Spanish and English, and both versions of the Notice will be posted. CMA shall ensure that the postings are not altered, defaced or covered by any other material.

51.     CMA shall certify to EEOC in writing within twenty-one (21) days after entry of this Decree that the copies of the Notice have been properly posted and identify the location(s) of the postings. CMA shall permit a representative of EEOC to enter their premises for purposes of verifying compliance with this paragraph at any time during normal business hours without prior notice.

## DISPUTE RESOLUTION

52.     If either party to this Decree believes that the other party has failed to comply with any provision(s) of the Decree, the complaining party shall notify the other party of the alleged non-compliance in writing (either via letter or e-mail) and shall afford the alleged non-complying party twenty-one (21) days from receipt of the letter or email to remedy the non-compliance or to satisfy the complaining party that the alleged non-complying party has complied. If, however, the non-compliance involves the failure to make timely payment under Paragraphs 8 and 9, then Defendant must remedy the non-compliance within fourteen (14) days.  If the alleged non-complying party has not remedied the alleged non-compliance or satisfied the complaining party that it has complied within twenty-one (21) days, or fourteen (14) days for non-compliance with the payment obligations, the complaining party may apply to the Court for appropriate relief.

53.     In resolving any dispute with regard to CMA's compliance with any provision of the Decree, the Court shall have available to it all equitable remedies which come within the Court's inherent authority, including, but not limited to, extension of any or all terms of the Decree and/or imposing a monetary fine for non-compliance.

## **DURATION OF THE DECREE AND RETENTION OF JURISDICTION**

54.     All provisions of this Decree shall be in effect (and the Court will retain jurisdiction of this matter to enforce this Decree) for a period of 3 (three) years immediately following entry of the Decree, provided, however, that if, at the end of the 3 (three) year period, any disputes under Paragraph 52 above, remain unresolved, the term of the Decree shall be automatically extended for the sole purpose of resolution of the issues raised in such disputes (and the Court will retain jurisdiction of this matter to enforce the Decree) until such time as all such disputes have been resolved. EEOC may petition the Court to release Defendant from the obligations of this Decree after 2 ½ (two and one half) years if EEOC determines, in its sole discretion, that Defendant's level of compliance warrants such early release.

## **MISCELLANEOUS PROVISIONS**

55.     The terms of this Decree shall be binding upon the present and future directors, officers, managers, agents, successors and assigns of Defendant. Defendant, and any successor(s) of Defendant, shall provide a copy of this Decree to any organization or person who proposes to acquire or merge with Defendant, or any successor of Defendant, prior to the effectiveness of any such acquisition or merger. This paragraph shall not be deemed to limit any remedies available in the event of any finding by the Court regarding a violation of this Decree.

56.     Each party to this Decree shall bear its own expenses, attorney's fees and costs.

57.     If any provision(s) of the Decree are found to be unlawful, only such provision(s) shall be severed, and the remainder of the Decree shall remain in full force and effect.

58.     When this Decree requires a certification by Defendant of any fact(s), such certification shall be made under oath or penalty of perjury by an officer or authorized management employee of Defendant to the best of such officer's or management employee's knowledge, information and belief.

59.     When this Decree requires notifications, reports, and communications to the Parties,

they shall be made in writing and hand-delivered or sent through an overnight delivery service. They

shall also be contemporaneously e-mailed to:

**For EEOC:**
Chicago Meat Authority Settlement
Equal Employment Opportunity Commission
230 S. Dearborn, Suite 2920
Chicago, IL  60603
Laurie.Elkin@eeoc.gov
Richard.mrizek@eeoc.gov
Adrienne.Kaufman@eeoc.gov

**For Defendant:**
Carol A. Poplawski
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
155 N. Wacker Drive
Suite 4300
Chicago, IL  60606
312.558.1220
Carol.poplawski@ogletree.com

Louis D. Bernstein
James Trail
THE BERNSTEIN LAW FIRM, LLC
350 North Clark Street
Suite 400
Chicago, IL  60654
312.645.6091
lbernstein@bernsteinlawchicago.com
jtrail@bernsteinlawchicago.com

Any party may change such persons or addresses by written notice to the other party, setting

forth a different individual or address for this purpose.

ENTERED AND APPROVED FOR:

**For the EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION**
131 M Street, NE
Washington, DC 20507

GWENDOLYN YOUNG REAMS
Acting General Counsel

*Gregory Gochanour*
Gregory Gochanour
Regional Attorney
Chicago District Office
230 S. Dearborn, Suite 2920
Chicago, IL  60604


Deborah Hamilton
Supervisory Trial Attorney
Chicago District Office
230 S. Dearborn, Suite 2920
Chicago, IL  60604

Laurie Elkin
Richard J. Mrizek
Jeanne B. Szromba
Trial Attorneys
Chicago District Office
230 S. Dearborn, Suite 2920
Chicago, IL  60604

Adrienne Kaufman
Trial Attorney
U.S. Equal Employment Opportunity Commission
330 Second Avenue South, Suite 720
Minneapolis, MN  55401


**For Defendant Chicago Meat Authority, Inc.:**

*Carol A. Poplawski*
Carol A. Poplawski
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
155 N. Wacker Drive
Suite 4300
Chicago, IL  60606
312.558.1220

*Louis D. Bernstein*
_____
Louis D. Bernstein
James Trail
THE BERNSTEIN LAW FIRM, LLC
350 North Clark Street, Suite 400
Chicago, IL  60654
312.645.6091


_____


 ENTER:                                        DATE:

_____                       10/7/2021

 The Honorable John F. Kness
 United States District Judge

## EXHIBIT A

### RELEASE

In consideration for the payment(s) to be paid to me by Defendant Chicago Meat Authority (CMA), Inc. pursuant to the Consent Decree entered by Judge John F. Kness on October 7, 2021 in connection with the resolution of *EEOC v. Chicago Meat Authority, Inc.* No. 18-cv-01357 (N.D. Ill.) (the "Litigation"), I waive my right to recover for any claims of race discrimination, harassment or retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1991, 42 U.S.C. §1981a, that I had against Chicago Meat Authority, Inc. prior to the date of this release and that were included in the claims alleged in EEOC's complaint in *EEOC v. Chicago Meat Authority, Inc.* No. 18-cv-01357 (N.D. Ill.).


_____
Signature


_____
Name [Please Print]


_____
Date

## EXHIBIT B

### NOTICE TO ALL EMPLOYEES [to be posted in English and in Spanish]

This Notice is being posted pursuant to a Consent Decree entered by the federal court in *EEOC v. Chicago Meat Authority, Inc.* No. 18-cv-01357 (N.D. Ill.), resolving a lawsuit filed by the Equal Employment Opportunity Commission ("EEOC") against Chicago Meat Authority, Inc. ("CMA").

In its litigation, EEOC alleged that CMA violated Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") by (a) by failing or refusing to recruit and/or hire African Americans into bargaining unit positions because of their race; (b) subjecting African-American workers to harassment because of their race; and (c) terminating an African-American employee because of his race and in retaliation for his complaint of discrimination. CMA denied all of the allegations made by EEOC and filed an Answer denying any unlawful actions based on race or in retaliation for any activity.

To resolve the case, CMA and EEOC have entered into a Consent Decree which provides, among other things, that:

1) Defendant CMA will pay monetary relief to resolve the race discrimination and retaliation claims against it;

2) CMA will not discriminate against any employee on account of race or for complaining of discrimination;

3) CMA will not retaliate against any employee who has made allegations of discrimination or participated in any way in a proceeding involving discrimination under Title VII or received any benefit as a result of the litigation or the Decree;

4) CMA will provide training in English and in Spanish on race discrimination, race harassment and retaliation; and

5) Defendant will make Best Efforts to hire qualified African Americans into each bargaining unit position.

EEOC enforces the federal laws against discrimination in employment on the basis of race, color, religion, national origin, sex, religion, age, disability or genetic information. If you believe you have been discriminated against, you may contact EEOC at (312) 869-8009. EEOC charges no fees and has a TTD number.

### THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE

**This Notice must remain posted for 3 years from the date below and must not be altered, defaced or covered by any other material. Any questions about this Notice or compliance with its terms may be directed to:**

**Chicago Meat Authority, EEOC,**
**230 S. Dearborn, Suite 2920**
**Chicago, IL 60604.**

10/7/2021

Hon. Judge John F. Kness
United States District Court